**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**KHYANA B.**

                           **Plaintiff,**                    **22-CV-6408-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

_____

**DECISION AND ORDER**

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

**BACKGROUND**[1]

On August 23, 2019, plaintiff, at the age of 23, filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of June 3, 2018. Dkt. #4-2, p. 16; Dkt. #4-6, p. 2.

In a Disability Report filed on October 24, 2019, plaintiff alleged she was disabled due to chronic back pain, chronic stomach pain, depression, and anxiety. Dkt. #4-6, p. 21.

_____

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff's claim was denied initially on January 10, 2020, and on reconsideration on March 4, 2020. Dkt. #4-4, pp. 2-7, 11-22. Plaintiff requested a hearing, and a telephonic hearing before Administrative Law Judge ("ALJ") John P. Costello was held on February 17, 2021. Dkt. #4-2, pp. 33-65. Plaintiff appeared with her counsel. *Id.*

Upon examination by the ALJ, plaintiff testified that the highest level of education she completed was the tenth grade. Dkt. #4-2, p. 40. She testified that she was currently employed as a hostess at Applebee's and works three to four days a week, up to 25 hours per week. Dkt. #4-2, pp. 40-41. As a hostess, she greets customers and takes them to their seats. Dkt. #42-1, p. 41. She had been working at Applebee's for three months. Dkt. #4-2, p. 42.

Plaintiff next testified that she is single and has a two-year old daughter and a five-month old son. Dkt. #4-2, pp. 41-42.

Plaintiff testified that prior to working at Applebee's, she worked at Walmart for about two months as a cashier, but she quit because standing put too much strain on her back. Dkt. #4-2, pp. 42-43. She also testified that she could not work while she was pregnant because she was too sick. Dkt. #4-2, p. 43. Prior to working at Walmart, she worked at McDonalds as a team member for about a year. *Id.* In that job, she served customers, rang up orders, and worked the drive-through window. Dkt. #4-2, pp. 43-44.

Next, plaintiff testified that, in her job at Applebee's, she does not lift anything heavy, and she stands a lot but also takes breaks to sit if she needs to do so. Dkt. #4-2, p. 45. At McDonalds, she was under a weight restriction and probably never lifted anything over five pounds. Dkt. #4-2, pp. 45-46. Plaintiff testified that, at McDonalds, she was on her feet most of the time. Dkt. #4-2, p. 46.

Upon examination by her counsel, plaintiff testified that she had been diagnosed with gastritis and, for several years, had been regularly nauseous and vomiting, which gets worse when she is pregnant. Dkt. #4-2, p. 47. Over a three-year period, she lost 60-70 pounds and now weighs 190 pounds. *Id.*

Plaintiff testified that the bouts of nausea and vomiting come on randomly, and she can be sick for up to a week and is unable to get out of bed. *Id.* This has caused her to miss work, and she testified that she has missed four days of work during her time at Applebee's. Dkt. #4-2, pp. 48-49.

Next, plaintiff's counsel noted that plaintiff's medical records contain notes that her nausea and vomiting were caused by marijuana use, and plaintiff testified that she had not used marijuana since December 2020. Dkt. #4-2, p. 49. She testified that she was in a study which concluded that the marijuana did not affect her nausea one way or another. Dkt. #4-2, pp. 49-50.

Plaintiff also testified that the marijuana had been prescribed to help her lower back pain. Dkt. #4-2, p. 50. She experiences such pain "24/7," and she was using a brace but stopped using it and started going back to the chiropractor. *Id.* Plaintiff testified that the back pain radiates down into her legs, and her left leg is worse and goes numb. *Id.* The back pain also affects her ability to stand and walk, and sitting for a long time is particularly difficult because her buttocks go numb and she feels shooting pain. Dkt. #4-2, pp. 50-51. At work, she moves around constantly and needs to stand up after sitting for ten minutes, and she needs to move around after five minutes of standing. Dkt. #4-2, p. 51.

As to walking, plaintiff testified that she is able to take customers to their tables without a problem, and the back pain does not make her unable to go to work, it just limits the things that she can do. Dkt. #4-2, p. 52.

Plaintiff next testified that at McDonalds, she had limitations on reaching and lifting that came from her doctor at Highland Family Medical. *Id.* Her job at McDonalds ended because she moved out of state. Dkt. #4-2, p. 53.

Next, plaintiff testified that her back pain does not really interfere with caring for her children, but the nausea and vomiting do. *Id.* When she is sick, the children's father takes care of them. *Id.* However, she can lift her infant son, who weighs 14 pounds. *Id.*

Plaintiff also testified that she takes over-the-counter pain medications, and they ease the pain but do not make it go away. Dkt. #4-2, p. 54. She also testified that no medicines help with her nausea, and she takes a hot shower to help her relax. *Id.*

Plaintiff next testified that she stopped going to mental health counselling in July 2018 because she did not feel like it was helping. *Id.* She testified that she has mood swings and anxiety and sometimes just shuts people out. Dkt. #4-2, p. 55.

As to daily activities, plaintiff testified that she sometimes does cooking and cleaning, going up and down stairs is difficult, and her family members do the laundry. Dkt. #4-2, p. 56. She also testified that she has no problems with her personal care, such as showering and getting dressed. Dkt. #4-2, pp. 56-57. As to meals, plaintiff testified that she usually orders out. Dkt. #4-2, p. 57.

The ALJ then asked vocational expert ("VE") Brian Daly to classify plaintiff's past work. The VE testified that plaintiff's work at McDonalds would be classified as a fast food worker, which is a light physical demand level. Dkt. #4-2, p. 59. Similarly, plaintiff's job at Applebee's is classified as hostess, also a light physical demand level. *Id.*

Next, the ALJ asked the VE to consider a hypothetical person of plaintiff's age, education, and work experience who has the residual functional capacity to perform light work, except she is limited to performing simple, routine tasks and can have no more than occasional exposure to respiratory irritants such as dust, odors, fumes, extremes in

temperature, and humidity. Dkt. #4-2, p. 60. The VE testified that such a person could perform the light unskilled work of cashier II and routing clerk. Dkt. #4-2, pp. 60-61.

Next, the ALJ asked the VE to add to the hypothetical that the person would be limited to a full range of sedentary work. Dkt. #4-2, p. 61. The VE testified that the person would not be able to perform plaintiff's past work, but she would be able to perform the work of document preparer and cutter and paster. *Id.*

Finally, the ALJ asked the VE to assume also that the person would, on average, miss four days per month due to impairments. *Id.* The VE testified that the person would be precluded from performing any competitive employment in the national economy on a full-time basis. Dkt. #4-2, p. 62.

Plaintiff's counsel then asked the VE how many absences per month are typically tolerated by employers, and he said one per month and that arriving late or leaving early are generally treated as absences. *Id.* In addition, the VE testified that to maintain competitive employment, an individual can generally be off task no more than 10% of the workday, in addition to 15-minute breaks in the morning and afternoon, plus a lunch break of 30 to 60 minutes. Dkt. #4-2, pp. 62-63.

Next, with respect to the light duty jobs the VE identified, plaintiff's counsel asked what effect it would have if the person needed to alternate between sitting and standing every 30 minutes, and the VE testified it would have no effect on her ability to

perform those jobs. Dkt. #4-2, p. 63. Similarly, the VE testified that the person could still perform those jobs if she needed to sit for 5 minutes after the 30-minute changes in position. Dkt. #4-2, pp. 63-64. Finally, the VE testified that the sedentary jobs he identified also allow for a sit/stand option. Dkt. #4-2, p. 64.

On April 8, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4-2, pp. 13-32. The Appeals Council denied plaintiff's request for review on July 26, 2022, Dkt. #4-2, pp. 2-7, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since

June 3, 2018, the alleged onset date; (2) plaintiff has the severe impairments of gastritis, obesity, anxiety, and depression;  (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2], with the following limitations: she can only occasionally be exposed to respiratory irritants such as dust, odors, fumes, extremes in temperatures, and humidity; and she is limited to performing simple, routine tasks;  (5) plaintiff is capable of performing her past relevant work as a fast food worker and, in the alternative, she is capable of performing the light work occupations of cashier II and routing clerk; and (6) plaintiff was not, therefore, disabled within the meaning of the SSA from June 3, 2018, to the date of the ALJ's decision. Dkt. #4-2, pp. 19-27.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

## Challenges to the ALJ's Decision

Plaintiff makes two challenges to the ALJ's decision: she argues that (1) the ALJ failed to reconcile the RFC with the more restrictive opinion of Dr. Harbinder Toor ("Dr. Toor"), a consultative medical examiner; and (2) the ALJ failed to conduct a detailed assessment of plaintiff's mental health limitations when formulating the RFC and failed to account for her moderate limitations in concentration, persistence, and pace.

### *Dr. Toor's Opinion*

On December 2, 2019, Dr. Toor performed a consultative physical examination of plaintiff. Dkt. #4-7, pp. 775-777. Dr. Toor noted plaintiff's complaint of a history of lower back pain since 2015 after the birth of her baby. Dkt. #4-7, p. 776. Dr. Toor also noted that plaintiff appeared to be in moderate pain and wore a back brace, which she removed for the examination. Dkt. #4-7, p. 776. She appeared to be in no acute distress; had a normal gait; could walk on her heels and toes without difficulty; could squat 20% of full; had a normal stance; used no assistive devices; needed no help changing; but she declined to lie down on the table and had difficulty getting out of the chair. *Id.*

Dr. Toor also noted that plaintiff had full flexion and rotary movement in her cervical spine; no abnormality in the thoracic spine; had limited flexion and extension in her lumbar spine; had full range of motion in her hips, knees, and ankles; her joints were stable; and she had 5/5 strength in her upper and lower extremities. Dkt. #4-7, pp. 776-777.

In his medical source statement, Dr. Toor opined that plaintiff had "moderate" limitations in standing, walking, and sitting a long time. Dkt. #4-7, p. 777. He also opined that plaintiff had "moderate to marked" limitations bending, lifting, and carrying and that—due to plaintiff's history of asthma—she should avoid irritants or other factors which can precipitate asthma. *Id*.

The ALJ found Dr. Toor's opinion "generally persuasive," noting that it was supported by his exam findings and consistent with plaintiff's medical history of complaints of back pain and her testimony of the need for a brace for lifting. Dkt. #4-2, p. 25.

Plaintiff argues that the ALJ failed to incorporate into plaintiff's RFC all of Dr. Toor's opined limitations and that he failed to explain why. Dkt. #6-1, pp. 13-19. This argument is not well taken for several reasons.

First, it rests on a false premise. "[W]hile the case law is not well settled, many courts in this Circuit have concluded that an RFC for light work—involving up to six hours of standing and walking per day—is not inconsistent with medical opinions specifying up to moderate limitations in prolonged standing walking, lifting, etc." *Paula S. v. Kijakazi*, 21-CV-0076L, 2023 WL 2266402, at *3 (W.D.N.Y. Feb. 28, 2023) (citation and internal quotation marks omitted). *See also Christopher P. v. Comm'r of Soc. Sec.*, CASE NO 6:21-cv-06108, 2024 WL 2831839, at *4 (W.D.N.Y. June 4, 2024) ("Additionally,

Courts in this Circuit have found that a physician's description of 'moderate' limitations is often consistent with the ability to perform light work.") (citation omitted).

Thus, by limiting plaintiff to light work, the ALJ did, implicitly, incorporate Dr. Toor's opinion that plaintiff had moderate limitations in standing, walking, and sitting a long time. *See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.") (citing 20 C.F.R. § 404.1567(b)).

Similarly, the light-work RFC is not inconsistent with Dr. Toor's opinion that plaintiff had "moderate to marked" limitations in bending, lifting, and carrying. *See, e.g., Deshantal W. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-624-DB, 2024 WL 1157048, at *14 (W.D.N.Y. Mar. 18, 2024) (plaintiff's primary care physician's opinion that plaintiff was "very limited" in lifting, carrying, pushing, and pulling was consistent with RFC for light work); *Moxham v. Comm'r of Soc. Sec.*, 3:16-CV-1170 (DJS), 2018 WL 1175210, at *8 (W.D.N.Y. Mar. 5, 2018) (opinion of consultative examiner that plaintiff had "marked" limitations for squatting, lifting, and carrying was not inconsistent with light work).

Moreover, to the extent that plaintiff contends that the RFC did not include a bending restriction recommended by Dr. Toor, it is well established that "[t]here is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner." *Moxham*, 2018 WL 1175210, at *8 (citations and internal quotation marks omitted).

Thus, because the RFC was consistent with Dr. Toor's opinions about plaintiff's physical limitations, plaintiff's argument that the ALJ failed to "reconcile" those opinions with the RFC is without merit.

Further, the ALJ based the RFC not only on Dr. Toor's opinion but on other substantial evidence. In particular, the ALJ noted that, despite plaintiff's allegations of disability, at the time of the hearing she had been working for three months as a hostess at Applebee's. Dkt. #4-2, p. 21. The ALJ also noted that plaintiff reported being able to perform her duties as a hostess, and she had been working up to 25 hours a week. *Id*.

The Court of Appeals has held that the fact that a plaintiff performed light work during the period of alleged disability is substantial evidence supporting an RFC finding that she can perform such past relevant work. *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008).

Stated more generally, an "ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled." *Silva v. Saul*, 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) (citing 20 C.F.R. § 404.1571) (collecting cases). *See also Jose F. v. O'Malley*, 22-CV-325F, 2024 WL 4210900, at *7 (W.D.N.Y. Sept. 17, 2024) (evidence that plaintiff continued to work during period of alleged disability was permissible basis for ALJ to find as unpersuasive medical opinion that plaintiff was

disabled); *Michael T. v.* O'Malley, 21-CV-6429F, 2024 WL 4023246, at *8 (W.D.N.Y. Sept. 3, 2024) ("That Plaintiff continued to work while his disability benefits application was pending was properly considered by the ALJ that Plaintiff remained capable of working," along with other evidence); *Christopher P.*, 2024 WL 2831839, at *5 (ALJ properly considered plaintiff's part-time retail work in reaching determination that plaintiff was not disabled); *Justin B. v. Comm'r of Soc. Sec.*, 20-CV-01810, 2022 WL 17592399, at *8 (W.D.N.Y. Dec. 13, 2022) ("A claimant's work during the relevant period may speak to his ability to perform his RFC.") (citation omitted).

Here, the ALJ also reviewed plaintiff's testimony and medical records, concluding that, despite numerous emergency room visits for nausea and vomiting, "multiple workups were essentially normal," and plaintiff's symptoms were largely resolved with medications. Dkt. #4-2, p. 24.

The ALJ also considered plaintiff's activities of daily living to which she testified and as she reported to the consultative examiners. *Id.* For example, plaintiff testified that she cared for her toddler and infant with assistance from their father, and she could lift the 14-pound baby. *Id.* She reported to consultative psychiatric examiner Dr. Christine Ransom ("Dr. Ransom") that she was able to cook, clean, do laundry, and ride the bus as needed. *Id.* She reported to Dr. Toor that she cooked three days a week and cleaned and shopped twice a week. *Id.*

The ALJ concluded that this evidence "did not support the degree of limitation alleged." *Id.* That, of course, is entirely permissible. *Christopher P.*, 2024 WL 2831839, at *5.

Finally, the ALJ reviewed and found generally persuasive the opinions of two state agency consultants who opined that plaintiff was capable of performing light work. Dkt. #4-2, p. 25. "State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can serve as substantial evidence." *Jose F.*, 2024 WL 4210900, at *8 (citations omitted); *Michael T.*, 2024 WL 4023246, at *7 (similar).

For these reasons, the Court finds no basis for remand based on the ALJ's treatment of Dr. Toor's opinions.

### *The ALJ's Assessment of Plaintiff's Mental Limitations*

Plaintiff's second argument is that the ALJ failed to adequately account in the RFC for his finding at step three that plaintiff had a "moderate" limitation in the functional area of concentration, persistence, or pace. Dkt. #6-1, pp. 19-21.

By way of background, on December 2, 2019, Dr. Ransom conducted a psychiatric examination of plaintiff. Dkt. #4-7, pp. 770-773. In her report, Dr. Ransom noted that plaintiff's attention and concentration were intact, and that she could count

backward from 20, do simple calculations and serial sevens without error. Dkt. #4-7, p. 771.

In her medical source statement, Dr. Ransom opined that plaintiff showed "no evidence of limitation" in sustaining concentration and performing a task at a consistent pace or in sustaining an ordinary routine at work. Dkt. #4-7, p. 772.

At step three of the sequential analysis, the ALJ considered the "paragraph B" criteria regarding mental impairments. Dkt. #4-2, p. 20. As relevant here, the ALJ stated:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Dr. Ransom noted intact concentration and attention (Exhibit B4F). The claimant works as a hostess, suggesting an ability to work with others, keep a schedule, and attend to tasks. Records from Genesee Mental Health indicated concentration and attention within defined limits (Exhibit B1F/4). The claimant plays games on her phone and completes initiated tasks (Exhibit B7F).

Dkt. #4-2, p. 20.

Later, in explaining how he arrived at the RFC, the ALJ stated that, notwithstanding Dr. Ransom's persuasive opinion that plaintiff had no limitation in concentrating, he nonetheless included a moderate limitation due to plaintiff's diagnosis of depression. Dkt. #4-2, p. 25.

Similarly, the ALJ found that the opinions of two state agency reviewing psychologists—both of whom opined that plaintiff had no limitation in any of the paragraph B functional areas, Dkt. #4-3, pp. 4-6, 18-19—were generally persuasive but that they did not "adequately consider the claimant's treatment history, though brief, at Genesee Mental Health." Dkt. #4-2, p. 25.

Plaintiff argues that the ALJ's limitation of plaintiff to simple, routine tasks in the RFC does not adequately account for the moderate limitation in concentrating, persisting, or maintaining pace which the ALJ assessed at step three. Dkt. #6-1, p. 20. The Court disagrees.

It is well established in this Circuit that an opinion of "mild to moderate limitations in mental functioning is not inconsistent with an RFC for unskilled work." *Waledahmad A. v. Comm'r of Soc. Sec.*, Case # 1:22-cv-398-DB, 2024 WL 3722697, at *11 (W.D.N.Y. Aug. 8, 2024) (citing *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014)) (collecting cases). *See also Audrey v. Comm'r of Soc. Sec.*, 1:24-CV-00159 EAW, 2025 WL 1792682, at *8 (June 30, 2025) (limiting plaintiff to simple, unskilled work was consistent with mild-to-moderate limitations in mental functioning).

As the Court explained in *Waledahmad A.*:

First, as the ALJ noted, steps two and three of the sequential analysis require a different analysis than the RFC determination. . . The limitations identified at steps two and three are used to rate the severity of a claimant's mental impairments, while the mental RFC assessment at steps four and five requires a more detailed assessment of the areas of

> mental functioning. . . *The regulations make clear that the four factors applied at the third step are only used to evaluate the severity of a claimant's mental impairment, not the claimant's RFC at the fourth and fifth steps. . . Accordingly, a "mild" or "moderate" limitation found at steps two or three need not be included verbatim into the RFC.*

*Waledahmad A.*, 2024 WL 3722697, at *10 (citations omitted) (emphasis added).

In explaining the mental component of the RFC, the ALJ reasoned that plaintiff's part-time job as a hostess at Applebee's for the three months preceding the administrative hearing—in which she worked five days a week—demonstrated an ability to keep a schedule and attend to tasks. Dkt. #4-2, p. 24. He also noted that she had previously worked at McDonalds and that she had been discharged from mental health treatment in 2018 due to lost contact after attending only one appointment. Dkt. #4-2, pp. 22, 24.

Nonetheless, the ALJ imposed a greater restriction than recommended by the consultative and state experts by limiting plaintiff to performing simple, routine tasks. Dkt. #4-2, p. 21. *See Waledahmad A.*, 2024 WL 3722697, at *9 ("The Second Circuit and this Court have repeatedly affirmed decisions where the ALJ incorporated additional RFC restrictions beyond what a medical source identified.") (citations omitted).

Two cases on which plaintiff relies are distinguishable. In *Courtney F. v. Berryhill*, 5:18-CV-0047 (LEK), 2019 WL 4415620 (N.D.N.Y. Sept. 16, 2019), the Court held that the ALJ's failure to explain how plaintiff's limitations in concentration,

persistence, and pace may or may not have impacted her RFC required remand. *Id.* at *6-7.

The Court does not find this case persuasive as it is arguably at odds with the Second Circuit authority collected by the Court in *Waledahmad A.*, 2024 WL 3722697, at *11.

For example, in *McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014), the Court of Appeals held that an ALJ's failure to explicitly include in his RFC analysis plaintiff's moderate limitations in concentration, persistence, and pace was not a basis for remand because "Step Four findings need only 'afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *Id.* at 150 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (cleaned up).

The Court also found no error in the ALJ's hypothetical to the VE, which did not mention the non-exertional limitations, because the hypothetical included a limitation to "simple, routine, low stress tasks," and the record contained substantial evidence that plaintiff could engage in such tasks. *Id.* at 152.

The facts of this case align with the reasoning in *McIntyre*.

Moreover, *Courtney F.* is factually distinguishable. There, the Court found that the ALJ did not explain how plaintiff's non-exertional limitations factored into her RFC. *Courtney F.*, 2019 WL 4415620, at *6. In contrast, as discussed above, the ALJ here logically reasoned that, notwithstanding the moderate limitation assessed at step three, plaintiff's work at Applebee's demonstrated that she was able to keep a schedule and attend to tasks. Dkt. #4-2, p. 24. The ALJ thus adequately explained the bridge between his step three assessment and his conclusion that plaintiff could perform her past relevant work, as well as other jobs in the national economy.

Finally, plaintiff relies on *Karabinas v. Colvin*, 16 F. Supp.3d 206 (W.D.N.Y. 2014). Dkt. #6-1, p. 20. But this case is also distinguishable. Although the ALJ there found at step three that plaintiff had moderate limitations in concentration, persistence, and pace, he did not reference those limitations in formulating the RFC and, importantly, did not limit plaintiff to simple, routine, or unskilled work. *Id.* at 216.

The facts here are different. As stated above, in framing the RFC, the ALJ noted plaintiff's ability to "keep a schedule and attend to tasks" in connection with her job at Applebee's. Dkt. #4-2, p. 24. It is apparent to the Court that this was a nod to the step three findings and an explanation of the ALJ's determination that those findings did not warrant greater non-exertional limitations. Dkt. #4-2, p. 21 ("The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.").[3]

---

[3] Plaintiff also argues in her brief that the step-three finding translates into the conclusion that plaintiff would likely be off task for 33% of the workday. Dkt. #6-1. But plaintiff cites no record

"To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act." *Michael T.*, 2024 WL 4023246, at *8 (citing *McIntyre*, 758 F.3d at 149). As such, the Commissioner's decision must be upheld. *Id.*

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #7) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
                 February 2, 2026

                                                  **_s/ H. Kenneth Schroeder, Jr._**
                                                  **H. KENNETH SCHROEDER, JR.**
                                                  **United States Magistrate Judge**

---

evidence to support this argument, and it is directly contradicted by her testimony regarding her employment at Applebee's and the opinions of Dr. Ransom and the state agency consultants.